UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ALLYSON MATEO,

       Plaintiff,

  -v-                                                            No. 14 CV 9020-LTS

THE CITY OF NEW YORK, et al.,

       Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Allyson Mateo initiated this action against the City of New York and Detectives Michael Carinha, "John" Bello, and "John" Rosario (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 in 2014, asserting false arrest, false imprisonment, malicious prosecution, denial of a fair trial, and related state law claims. On March 31, 2015, the parties stipulated to a voluntary dismissal of Plaintiff's federal false arrest and false imprisonment claims against all Defendants, and all of Plaintiff's state law claims against the City of New York. The stipulation recites that "[t]he parties . . . agree that the only remaining claims are for malicious prosecution pursuant to 42 U.S.C. § 1983 against THE CITY OF NEW YORK AND Detectives CARINHA, BELLOW, AND ROSARIO, and for false arrest and false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, common law negligence, and malicious prosecution arising under New York State law, against Defendants CARINHA, BELLO AND ROSARIO." (Docket entry no. 5.) Plaintiff filed an Amended Complaint on October 13, 2015, asserting only a claim for "Deprivation of Federal Civil Rights Under 42 U.S.C. § 1983" against all of the Defendants, a malicious prosecution claim against the Defendant City, and a claim for "Denial of Constitutional Right to Fair Trial

Under 42 U.S.C. § 1983" against all of the Defendants. (Docket entry no. 18, Am. Compl. ¶¶ 29-45.)

On March 3, 2017, Defendants filed a motion for summary judgment on Plaintiff's remaining claims. (Docket entry no. 40, the "Motion.") In response to the Motion, Plaintiff voluntarily discontinued his malicious prosecution claim against Defendant Bello and his Monell[1] municipal liability claim against the Defendant City. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331. The Court has reviewed the parties' submissions carefully and, for the reasons that follow, Defendant's Motion is granted in part and denied in part.

BACKGROUND

The following facts are material to this motion practice and are undisputed unless otherwise indicated. On July 26, 2011, Plaintiff Allyson Mateo, the owner of a 2004 Lincoln LS, entered his car to drive to the Butler-Webster housing projects in the Bronx with three friends, including an individual named Kendall Thompson. (Docket entry no. 41, Defs. Local R. 56.1 Statement of Undisputed Facts ("Defs. 56.1 Stmt.") ¶¶ 1, 5.[2]) Mateo's friends had bags with them, so Mateo opened the trunk of his vehicle and his friends placed their bags inside the trunk. (Id. ¶ 6.) Mateo and his friends drove to the Bronx and Mateo parked his vehicle on the street in the vicinity of 171st Street and Webster Avenue. (Id. ¶ 8.) Mateo opened the trunk, and his friends walked to the rear of the vehicle to retrieve their bags. (Id. ¶ 9.) Mateo did not observe his friends retrieving their bags, and subsequently locked the car. (Id. ¶¶ 10, 11.) Mateo and his

---

[1] See docket entry no. 61, Pl. Opp. to Motion ("Opp.") at 8, n.2, 29, n.5; Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).
[2] Citations to the parties' S.D.N.Y. Local Civil Rule 56.1 Statements incorporate by reference the evidence cited in support of those statements.

friends then walked to the Butler-Webster houses and met with an individual named Daquan Palmer, whom Mateo had never met before that day. (Id. ¶¶ 12, 13.) Shortly thereafter, Thompson informed Mateo that he needed to retrieve something from Mateo's car, which was parked approximately one street away. (Id. ¶¶ 14, 15.) Mateo walked back towards his car with Thompson, Palmer, and another individual. (Id. ¶ 17.) Mateo unlocked the car for Thompson with a remote, and then left Thompson and Palmer with his unlocked car while he walked back to the Butler-Webster houses with the unnamed individual. (Id. ¶¶ 19, 21.) Mateo did not observe Thompson or Palmer retrieve any items from his car. (Id. ¶ 20.)

Detective Michael Carinha was on duty and sitting alone in the driver's seat of a grey Mazda 6 parked on Webster Avenue, two cars behind Mateo's car. (Id. ¶ 16.) Carinha observed Thompson walk to the back of Mateo's car, look around numerous times, and then open the trunk. (Id. ¶ 22.) Carinha observed Thompson remove a bag from the trunk of Mateo's car, look around again, close the trunk, and walk to Palmer, who was standing on the sidewalk next to the mid-section of Mateo's car. (Id. ¶ 23.) Carinha observed Palmer hand Thompson a sum of money. (Id. ¶ 24.) Carinha then saw Thompson enter the front passenger seat of Mateo's car with the bag, while Palmer entered the rear passenger side. (Id. ¶ 25.) At that point, Carinha radioed Defendants Bello and Rosario to come to the scene. (Id. ¶ 26.) As Thompson and Palmer exited Mateo's vehicle, Carinha, Bello, and Rosario approached and stopped Thompson and Palmer. (Id. ¶ 27.) Carinha observed the bag Thompson had removed from the trunk on the rear floor of Mateo's car. (Id. ¶ 29.) Carinha recovered the bag and found a loaded gun inside. (Id. ¶ 30.) Thompson and Palmer were arrested and searched, and a quantity of drugs was found on them. (Id. ¶ 31.) Carinha attempted to access the trunk of Mateo's car, but could not because it was locked. (Id. ¶ 33.) Carinha vouchered the gun as arrest evidence. (Id. ¶ 34.)

Mateo then returned to the area where his car was parked. (Id. ¶ 35.) Mateo informed Carinha that he owned the car, that it was registered in his name, and that he had the keys. (Id. ¶¶ 37, 38.) Mateo gave Carinha his license and the keys to the vehicle. (Id. ¶ 39.) Carinha then arrested Mateo. (Id. ¶ 40.) Carinha searched Mateo's car and reported that he found a quantity of marijuana and cocaine in the glove compartment. (Id. ¶ 41; see also docket entry no. 60-7, DA Data Sheet.) Carinha vouchered the drugs as arrest evidence and property of Mateo. (Docket entry no. 42-3, NYPD Property Clerk Voucher, Invoice No. 2000010444.) Mateo, who acknowledges that others had been in his car in his absence, nonetheless denies that there was marijuana and cocaine in the glove compartment of his car. (Docket entry no. 62, Pls. Resp. to Defs. 56.1 Stmt. ("Pls. Resp.") ¶¶ 25, 41; docket entry no. 60-1, Mateo Dep. at 104:13-24.)

Mateo was arraigned on July 27, 2011, in the Supreme Court of the State of New York on charges of criminal possession of a weapon in the second, third, and fourth degrees, possession of ammunition, criminal possession of a controlled substance in the seventh degree, and unlawful possession of marijuana. (Defs. 56.1 Stmt. ¶ 42; docket entry no. 60-2, Criminal Compl. at 1.) In the criminal complaint, which was signed and sworn to by Carinha, Carinha alleged that Mateo had been standing near the hood of his car while Thompson removed the bag from the trunk of the car, got into the car, and exited the car without the bag. (Criminal Compl. at 2.) The unsigned, unattributed "DA Data Sheet" also includes an assertion that Mateo was at the hood of the car during Thompson's transaction. The criminal complaint also includes Carinha's assertions that he "observed" the gun in the bag and the drugs "in defendant['s] custody and control." (Id.) A grand jury subsequently indicted Mateo on a single charge of criminal possession of a weapon in the second degree. (Defs. 56.1 Stmt. ¶ 44.) On August 19,

2013, after a hearing, evidence of the gun found in Mateo's car was suppressed and the sole charge against Mateo was dismissed. (Id. ¶ 46.) Mateo, who had not been able to make bail, was held in custody for over two years until the charges against him were dismissed. (Id. ¶ 43; Opp. at 4.)

DISCUSSION

Defendants have moved for summary judgment as to all of Mateo's claims. Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and a genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). The Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

Mateo does not dispute that his malicious prosecution claim is only pled against the City of New York and that he has proffered no evidence to support municipal liability on that claim under 42 U.S.C. § 1983, but argues that this Court should "deem the malicious prosecution claim to be against all defendants." (Opp. at 18.) Mateo also argues that factual disputes preclude summary judgment on his malicious prosecution and fair trial claims. Mateo principally contends that two material facts are genuinely in dispute. First, Mateo disputes the veracity of certain statements in a "DA Data Sheet" and criminal complaint signed and sworn to by Carinha, which assert that Mateo was standing at the hood of the car when Thompson

removed a bag from the trunk of Mateo's car. (See Criminal Compl. at 2; DA Data Sheet.) Mateo contends that Carinha lied to the District Attorney's office by making these statements, and points to contrary testimony suggesting he was not standing at the hood of his car. (See Opp. at 9; Mateo Dep. at 50:23-51:4, 51:21-23, 52:13-23; docket entry no. 60-5, Carinha Dep. 29:10-18; docket entry no. 60-6, Rosario Dep. 56:7-10.) On the basis of this record, Mateo asserts that there is a genuine dispute of material fact as to whether the prosecution was based on fabricated evidence regarding his connection with the firearm that was taken from the trunk of the car. Second, Mateo asserts that there were no narcotics in the glove compartment of his car, and argues that any statements made by Carinha to that effect are also fabrications. (Opp. at 9; Criminal Compl. at 2; DA Data Sheet.) Mateo does not contest, however, that in July of 2011, he was the only person who drove his car, and the only person who had keys to his car. (Pls. Resp. ¶¶ 3, 4.) Mateo also does not contest that the trunk of his car could not be opened from the exterior without the remote trunk release if the car was locked. (Id. ¶ 7.) Finally, Mateo does not dispute that he had left Thompson and Palmer with his unlocked car, that Carinha saw Thompson enter the front passenger seat of the car, or that the marijuana and cocaine found by Carinha were vouchered. (Id. ¶¶ 21, 25, 41; see also NYPD Property Clerk Voucher, Invoice No. 2000010444.)

  A. Malicious Prosecution

Defendants argue that Mateo's malicious prosecution claim, which was pled only against Defendant City of New York, must be dismissed because Mateo has failed to adduce any evidence to establish a claim for municipal liability under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). (Motion at 5.) In response to this argument, Plaintiff voluntarily dismisses his Monell claims against the City, but argues that the malicious prosecution claim should be treated

as having been asserted against the individual Defendants. (Opp. at 18-20.) Defendants also argue that any amendment of Mateo's malicious prosecution claim to include the individual Defendants at this stage is both untimely and futile because Mateo cannot establish the elements of his malicious prosecution claim as to the individual Defendants. (Motion at 5-14; docket entry no. 67, Defs. Reply (the "Reply") at 2-4.) Finally, the individual Defendants contend that they are entitled to qualified immunity with respect to Mateo's malicious prosecution claim.

Because Mateo's malicious prosecution claim is only pled against the City of New York, the Court construes Mateo's request to "deem the malicious prosecution claim to be against all defendants," as a request for leave to amend that claim to assert it instead against individual Defendants Carinha and Rosario.[3] Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). While granting or denying such leave is within the discretion of the district court, Reisner v. General Motors Corp., 511 F. Supp. 1167, 1171 (S.D.N.Y. 1981), leave to amend will generally be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). "Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise

---

[3]  As noted above, Mateo is voluntarily dismissing his Monell claims against the City of New York and his malicious prosecution claim against Defendant Bello. (See Opp. at 8, n.2, 29, n.5.) The Court construes Mateo's voluntary dismissal of his Monell claims to encompass dismissal of all of his claims against the City, including Mateo's first claim for relief, which alleges a deprivation of "rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments" based upon acts carried out "pursuant to the customs, usages, practices, procedures, and rules of the City of New York and the New York City Police Department." (See Am. Compl. ¶¶ 29-34.)

triable issues of fact." AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted). Here, Plaintiff's request for leave to amend is futile because any amendment to include individual Defendants Carinha and Rosario would be untimely, and because Carinha and Rosario are entitled to qualified immunity.

1. Statute of Limitations

The statute of limitations for a section 1983 claim accruing in New York is three years. Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995). For malicious prosecution claims, this period begins to run when the underlying criminal action is conclusively terminated. Id. Mateo's case in the Bronx County Supreme Court was dismissed on August 19, 2013. (Defs. 56.1 Stmt. ¶ 46.) Thus, any malicious prosecution claim relating to that prosecution was required to have been asserted by August 19, 2016. Assertion of the claim for the first time in 2017, when Plaintiff filed his opposition papers, would clearly have been untimely unless the claim could relate back to the date of Plaintiff's 2015 Amended Complaint.

An amendment to a pleading that attempts to bring in a new party will relate back to the date of the original pleading when "(1) the claim arises out of the same conduct originally pleaded, and (2) within (ordinarily) 120 days of the original filing date, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35 (2d Cir. 1996). Mateo's malicious prosecution claim against Defendants Carinha and Rosario cannot relate back to the date of filing of his Amended Complaint pursuant to Fed. R. Civ. P. 15(c)(1)(C), because Mateo cannot demonstrate that the malicious prosecution claim against the individual Defendants was

omitted from the Amended Complaint due to a "mistake concerning the identity of the proper party." Mateo was clearly aware of both Defendants' identities and alleged role in the relevant events at the time he filed his Amended Complaint. Fed. R. Civ. P. 15(c)(1)(C); Weir v. City of New York, 2008 WL 3363129, at *10-11 (S.D.N.Y. Aug. 11, 2008) (finding that plaintiff's failure to name individual police officers as defendants in section 1983 suit against the City did not constitute a "mistake concerning the identity of the proper party."). Mateo's citation to Hanlin v. Mitchelson, 794 F.2d 834 (2d Cir. 1986) is inapposite, as that case involved a litigant who sought to amend her complaint to include additional claims of which the defendant was already on notice. Id. at 841. Here, Mateo does not seek to allege new claims, but rather to assert an existing malicious prosecution claim against new defendants. Similarly, Mateo's reliance on cases that discuss amendment under Fed. R. Civ. P. 15(b) is misplaced, as the instant motion practice does not contemplate an amendment to Mateo's Amended Complaint during or after trial. See, e.g., Jund v. Town of Hempstead, 941 F.2d 1271 (2d Cir. 1991). Mateo's reliance on statements made in the context of mediation is improper, see Fed. R. Evid. 408, and the individual Defendants would be prejudiced by an expansion of the claims against them after the close of discovery. Mateo thus cannot avoid the statute of limitations, and any amendment of his malicious prosecution claim to include Carinha and Rosario would be futile. The Court therefore declines to treat the malicious prosecution cause of action in the Amended Complaint as having been asserted against Defendants Carinha and Rosario, and denies Plaintiff's implicit request for permission to further amend his pleading to assert such a claim against those individual Defendants.

2. <u>Qualified Immunity</u>

Furthermore, even if Mateo's proposed amendment were timely, leave to amend to assert the malicious prosecution claim against Carinha and Rosario would also be futile because Carinha and Rosario are entitled to qualified immunity. In a section 1983 action for damages based on malicious prosecution, an officer is entitled to qualified immunity if "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." <u>O'Neill v. Town of Babylon</u>, 986 F.2d 646, 649-50 (2d Cir. 1993) (internal quotations omitted). Probable cause exists when the officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Id.</u> at 650.

Mateo was charged in the criminal complaint with, among other things, criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the seventh degree, pursuant to N.Y. Penal Law § 265.03(3) and § 220.03, respectively. Section 265.03(3) provides that "[a] person is guilty of criminal possession of a weapon in the second degree when . . . (3) such person possesses any loaded firearm." Section 220.03 provides that "[a] person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance." N.Y. Penal Law § 10.00(8) defines possession to include constructive possession, or the "dominion or control over tangible property." The following facts are undisputed: Carinha observed Mateo walking back towards his car with Thompson, Palmer, and another individual. (Pls. Resp. ¶ 17.) Mateo unlocked the car for Thompson with a remote before walking back to the Butler-Webster houses. (<u>Id.</u> ¶¶ 19, 21.) Carinha observed Thompson remove a bag from the trunk of Mateo's car, exchange a sum of money with Palmer, and enter the front passenger seat of Mateo's car with the

bag. (Id. ¶¶ 23-25.) The bag removed from the trunk of Mateo's car contained a loaded gun. (Id. ¶ 30.) Mateo informed Carinha that he owned the car, that it was registered in his name, and that he had the keys. (Id. ¶¶ 37, 38.) Mateo was the only person who had keys to his car. (Id. ¶¶ 3, 4.) The trunk of Mateo's car could not be opened from the exterior without the remote trunk release if the car was locked. (Id. ¶ 7.) Based on those undisputed facts, even when viewing the evidence in the light most favorable to Mateo and assuming that Mateo was not at the hood of his car when Thompson removed a bag containing a loaded firearm from the trunk, it was objectively reasonable for Carinha and Rosario to believe that Mateo exercised sufficient dominion and control over his car to constructively possess the loaded firearm that was retrieved. See People v. Ballard, 507 N.Y.S.2d 572, 588-89 (1986) ("[T]he issue [of constructive possession] is whether the nexus or connection between the accused and the contraband is sufficient for a rational conclusion that he or she in fact exercised dominion or control over it."). At a minimum, reasonable police officers could disagree on whether there was probable cause to charge Mateo with constructive criminal possession of a weapon in the second degree.

The same is true for Mateo's charge for criminal possession of a controlled substance in the seventh degree. Mateo does not dispute that certain quantities of marijuana and cocaine were vouchered by Carinha, nor does he dispute that two other individuals were inside his car while he was not present. (Pls. Resp. ¶¶ 21, 25, 41; NYPD Property Clerk Voucher, Invoice No. 2000010444.) Instead, Mateo argues Carinha fabricated his account of having recovered marijuana and cocaine from the glove compartment of Mateo's car, citing only Mateo's own testimony that there were no narcotics in his car. (Opp. at 9, 12.) Mateo's statement alone is insufficient to generate a genuine dispute of fact as to the existence of the marijuana and cocaine in Mateo's glove compartment, because Mateo has no personal

knowledge of what transpired when he was not present in the car and he was not in the car when Carinha reported that he had found drugs in its glove compartment.  See Carlisle v. City of New York, 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) ("Plaintiff's unsupported, conclusory allegation that someone must have planted the evidence because there is no other way it could have gotten into his apartment is not sufficient to defeat a motion for summary judgment.").  In this context, Mateo's citation to Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003) is unavailing.  In Boyd, the plaintiff was charged with criminal possession of a stolen vehicle based on an incriminating statement, which the plaintiff later testified was made after he was arrested and before he had been Mirandized.  Id. at 74-75.  The Boyd plaintiff's testimony was contradicted by the arresting officers in the case, who reported that the incriminating statement was made before the plaintiff's arrest.  Id. at 74, 77.  Unlike the instant case, however, the Boyd plaintiff's testimony was competent to present an issue of fact as to the sequence of events in which he was personally involved.  Id. at 77.  Thus, the Boyd court concluded that there was a sufficient factual dispute for a jury to reasonably find that an indictment was secured through bad faith.  Id.

  Here, Mateo's testimony is not based on personal knowledge of the content of the glove compartment as of the time of the search, and is contradicted by evidence that Mateo cannot controvert.  Accordingly, since there is no evidence raising any genuine issue of material fact as to whether drugs were found in Plaintiff's car, it was objectively reasonable for Carinha and Rosario to believe that Mateo exercised sufficient dominion and control over the glove compartment of his car to constructively possess a controlled substance.  Carinha and Rosario would thus be entitled to qualified immunity with respect to Mateo's malicious prosecution

claim and any amendment adding Carinha and Rosario as individual Defendants in connection with that claim would be futile.

B. Denial of Right to a Fair Trial

To prevail on a denial of fair trial claim, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 Fed. App'x 149, 152 (2d Cir. 2012). A plaintiff asserting a fair trial claim need not show that he was convicted or that the case even went to trial. Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). The fact that allegedly fabricated evidence would be inadmissible at trial by itself is not a bar to the claim. Soomro v. City of New York, 174 F. Supp. 3d 806, 816 (S.D.N.Y. 2016). Nor is probable cause a defense to a denial of fair trial claim. See Morse v. Spitzer, No. 07 Civ. 4793, 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012) (citing Jovanovic, 486 Fed. App'x at 152).

Mateo makes no claims that Defendants Rosario and Bello fabricated evidence, and thus his denial of right to a fair trial claim must be dismissed as against those Defendants. (See Am. Compl. ¶¶ 41-43.[4]) Mateo argues, however, that Carinha fabricated statements in a "DA Data Sheet" and criminal complaint that Mateo was standing at the hood of his car when Thompson removed a bag from the trunk, and that Carinha recovered cocaine and marijuana from the glove compartment of Mateo's car. (See Opp. 9; Criminal Compl. at 2; DA Data

---

[4] As previously noted, Plaintiff is voluntarily dismissing his malicious prosecution claim against Bello. (See Opp. at 8, n.2.) In his opposition papers to the motion for summary judgment, Plaintiff points out that Rosario prepared the arrest report and a "complaint form." (Id. at 7-8.) He does not identify any alleged false statements in either form, and thus makes no showing of evidence upon which a reasonable factfinder could conclude that Rosario denied Plaintiff his right to a fair trial.

Sheet.)  Because, as discussed above, Mateo has failed to demonstrate that there is a genuine dispute of fact as to the existence of cocaine and marijuana in the glove compartment of his car, he cannot sustain a fair trial claim based on his argument that Carinha fabricated evidence of the cocaine and marijuana.  See Apostol v. City of New York, No. 11-CV-3851, 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014), aff'd, 607 Fed. App'x 105 (2d Cir. 2015) (granting summary judgment on fair trial claim where the only evidence proffered by plaintiff to contradict evidence of marijuana found in his vehicle was plaintiff's own testimony that his car contained no marijuana).

There are, however, issues of fact as to whether Carinha fabricated statements asserting that Mateo was standing at the hood of his car when Thompson removed a bag from the trunk.  The statements in the DA Data Sheet and criminal complaint are contradicted by the testimony of Mateo, as well as Defendants Rosario and Carinha's own deposition testimony.  (Compare Criminal Compl. at 2; DA Data Sheet with Mateo Dep. at 50:23-51:4, 51:21-23, 52:13-23; Carinha Dep. 29:10-18; Rosario Dep. 56:7-10.)  Thus, a reasonable inference that the evidence was fabricated can be drawn.  Defendants argue that any fabrication regarding Mateo's whereabouts at the time of Thompson's activity with the gun is immaterial, and would not likely have influenced a jury's decision, because the firearm possession charge was based on the undisputed fact that a loaded gun was found in the trunk of a car owned exclusively by Mateo, and to which Mateo had the keys.  (Motion at 18.)  Because, however, criminal possession of a weapon in the second degree requires, among other things, that the defendant knowingly possess a loaded firearm, see N.Y. Pattern Criminal Jury Instructions, CJI2d[NY] Penal Law § 265.03(3) (rev'd ed. July 2016), statements regarding Mateo's proximity to the car when Thompson removed the gun could influence a jury's assessment of whether Mateo had knowledge of the

gun, and whether a prosecutor would have proceeded with the firearms possession charge if accurate information about Mateo's location at the relevant time had been provided. Because reasonable inferences could be drawn either way on the basis of the current record, Defendant Carinha is not entitled to summary judgment dismissing Mateo's denial of fair trial claim.

## CONCLUSION

Plaintiff has withdrawn his claims against the City of New York, and his malicious prosecution claim against Defendant Bello. For the foregoing reasons, Defendant's motion for summary judgment is granted as to all remaining claims asserted against Defendants Bello and Rosario, and as to all claims against Defendant Carinha other than Plaintiff's third claim for relief (denial of the right to a fair trial). Summary judgment dismissing the Amended Complaint is granted in all other respects. Plaintiff's request to prosecute the malicious prosecution claim as against the individual Defendants is denied. Accordingly, this action will proceed solely upon Plaintiff's denial of fair trial claim as against Defendant Carinha.

The final pre-trial conference in this case is adjourned to May 25, 2018, at 11:30 a.m. The Court will renew the reference of this case to the Mediation program, and the parties must confer and make submissions in advance of the final pre-trial conference as provided in the Pre-Trial Scheduling Order. (Docket entry no. 17.)

This Memorandum Opinion and Order resolves docket entry number 40.

SO ORDERED.

Dated: New York, New York
February 26, 2018

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge