UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

ALLYSON MATEO,

                    Plaintiff,                            **14 Civ. 9020 (LTS) (GWG)**

                 --against--

DETECTIVE MICHAEL CARINHA,

                    Defendant.

-------------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Law Offices of Jon L. Norinsberg
225 Broadway, Suite 2700
New York, NY 10007
*Attorneys for plaintiff*

# <u>TABLE OF CONTENTS</u>

<u>**Pages**</u>

**TABLE OF AUTHORITIES** …………………………………………………………..iii

**PRELIMINARY STATEMENT** …………………………………………………………1

**STATEMENT OF FACTS** ………………………………………………………………...3

**SUMMARY JUDGMENT STANDARD -- CONTRACT DISPUTES** ……………………..11

**ARGUMENT** ………………………………………………………………………...12

**I.** **SUMMARY JUDGMENT BASED ON THE GENERAL RELEASE MUST BE DENIED** …………………………………………………………………...12

    **A.** **A Release May Not Be Construed to Cover Claims Which the Parties Did Not Intend to Include** …………………………………………………………12

    **B.** **The Settlement Documents Contain Conflicting and Contradictory Language, Thus Precluding Summary Judgment** …………………….....…15

        **i.** **The Settlement Paperwork Consists of Multiple Documents, Not Just The General Release** …………………………………………………...15

        **ii.** **The Settlement Contract's Language is Ambiguous As a Matter of Law** …………………………………………………………...16

    **C.** **There was a Mutual Mistake as to the Scope of the Release, as the Parties Failed to Include the Federal Action in a Blank Space in the Release** ………..17

    **D.** **Plaintiff Did Not Knowingly and Voluntarily Waive his Federal Civil Rights Claim** ………………………………………………………………20

        **i.** **Plaintiff Had No Idea That His Federal Claims Could Be Extinguished By Signing the State Court Release** …………………………………………21

        ii. **Plaintiff Never Authorized the Settlement of His Federal Claims, and His Attorneys Lacked Authority to Do So on His Behalf** …………………....23

    **E.** **Detective Carinha was Not an Intended Third-Party Beneficiary of the Release Under New York Law** ………………………………………………..24

        **i.** **The Benefit to the Third Party Must Be "Sufficiently Immediate," and Not "Incidental"** …………………………………………………..24

**Conclusion** …………………………………………………………………………………………………...25

## <u>TABLE OF AUTHORITIES</u>

<u>PAGES</u>

<u>Albany Sav. Bank, F.S.B. v Halpin</u>, 117 F3d 669 (2d Cir. 1997) ……………………………17

<u>Allen v Westpoint-Pepperell, Inc.</u>, 945 F.2d 40 (2d Cir. 1991) …………………………...2, 18, 19

<u>ASI Sign Sys. v Architectural Sys.</u>, No. 99 Civ. 7962, 2000 U.S. App. LEXIS 4485
       (2d Cir. Mar. 21, 2000) ……………………………………………………………1, 12, 13

<u>Brancazio v. Amtrak</u>,  No. 82 Civ. 848 (RLC), 1982 U.S. Dist LEXIS 17019
       (S.D.N.Y. Dec. 17, 1982) ………………………………………………………………...19

<u>Burger King Corp. v. Horn & Hardart Co</u>, 893 F.2d 525 (2d Cir. 1990) ……………………11, 16

<u>Bushkin, Gaims, Gaines, Jonas & Stream v. Garber</u>, 677 F. Supp. 774 (S.D.N.Y. 1988) ………...19

<u>Buskey v. Bos. Mkt. Corp.</u>, No. 04 Civ. 2193 (SJ), 2006 U.S. Dist. LEXIS 65756
       (E.D.N.Y. Aug. 14, 2006) …………………………………………………………………..14

<u>Byrnie v. Town of Cromwell Bd. of Educ.</u>, 243 F.3d 93 (2d Cir. 2001) …………………………14

<u>Cahill v Regan</u>, 5 N.Y.2d 292 (1959) …………………………………………………………...12, 14

<u>California Pub. Emples. Retirement Sys. v Shearman & Sterling</u>, 95 N.Y.2d 427
       (2000) …………………………………………………………………………………..12, 14

<u>Clark v. Stinson</u>, 214 F.3d 315 (2d Cir. 2000) ……………………………………………………21

<u>Clerico v Pollack</u>, 148 A.D.3d 769 (2d Dep't 2017) ……………………………………………12, 13

<u>Curtis Publishing Co. v. Butts</u>, 388 U.S. 130 (1986) …………………………………………..21

<u>DePace v. Matsushita Elec. Corp. of Am.</u>, No. 02 Civ. 4312, 2004 U.S. Dist LEXIS 13316
       (E.D.N.Y. July 16, 2004) …………………………………………………………22, 23

<u>Doe v. Marsh</u>, 105 F.3d 106 (2d Cir. 1997) …………………………………………3, 20, 21

<u>Farrington v Harlem Sav. Bank</u>, 280 N.Y. 1 (1939) …………………………………………...24

<u>Fournier v. Canadian Pac. R.R.</u>, 512 F.2d 317 (2d Cir. 1975) …………………………...…18, 19, 20

<u>Fuentes v. Shevin</u>, 407 U.S. 67 (1972) …………………………………………………...3, 21

<u>Heyman v. Commerce and Industry Insurance Co.</u>, 524 F.2d 1317 (2d Cir. 1975) ………….11, 16

iii

Johnson v. Zerbst, 304 U.S. 458 (1938) …………………………………………………21

Kaminsky v Gamache, 298 A.D.2d 361 (2d Dep't 2002) …………………………………...14

Krentz v. Robertson Fire Protection District, 228 F.3d 897 (8th Cir. 2000) ……………….....21

LaSalle Nat'l Bank v. Ernst & Young LLP, 285 A.D.2d 101 (1st Dep't 2001) …………………24

Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360
        (2d Cir. 1991) …………………………………….............................................…22, 23

Lefrak SBN Assocs. v. Kennedy Galleries, Inc., 203 A.D.2d 256 (2d Dep't 1994) ………….12, 14

Legal Aid Society v. City of New York, 114 F. Supp. 2d 204 (S.D.N.Y. 2000) ……………...…21

Long Is. Airports Limousine Serv. Corp. v Playboy-Elsinore Assoc., 739 F.2d 101
        (2d Cir 1984) …………………………………………………………………11, 16

Matter of Mercer, 141 A.D.3d 594 (2016) …………………………………………………12

Mangini v McClurg, 24 N.Y.2d 556 (1969) …………………………………………..……1, 14

Michael Rose Prods., Inc. v Loew's, Inc., 143 F Supp 606 (S.D.N.Y. 1956) ………………..18, 20

Morris v. N.Y. City Emples. Retirement Sys., 129 F. Supp. 2d 599 (S.D.N.Y. 2001) ………20, 22

Painton & Company v. Bourns, Inc., 442 F.2d 216 (2d Cir. 1971) ………………………………16

Redwood Valuation Servs. LLC v Premium Holding, LLC, 2014 NY Slip Op 32544[U]
        (Sup Ct, N.Y. Co. 2014) ………………………………………………………………25

Ricketts v Pennsylvania R. Co., 153 F2d 757 (2d Cir. 1946) ……………………………………23

Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017 (2d Cir. 1985) …………….....…11, 16, 17

Rotondi v Drewes, 31 A.D.3d 734 (2d Dep't 2006) ……………………………………………...12

Saw Mill Broadcasters, Inc. v. Moore, 561 F Supp 1139 (S.D.N.Y. 1983) ………………………16

Schering Corp. v. Home Insurance Co., 712 F.2d 4 (2d Cir. 1983) ……………………………11, 16

Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425 (2d Cir. 1992) ……………………15, 16, 17

Tchatat v. City of New York, No. 14 Civ. 2385, 2015 U.S. Dist. LEXIS 115093
        (S.D.N.Y. Aug. 28, 2015) ………………………………………………………………25

iv

Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d 260 (2d Cir. 1987) …………………17

United States v. Local 1804-1, 44 F.3d 1091 (2d Cir. 1995) …………………………………...…21

## PRELIMINARY STATEMENT

Defendant's motion for summary judgment must be denied. On June 8, 2018, this Court issued an Order permitting Plaintiff to conduct discovery related to the release signed by Plaintiff in his state court personal injury action. (Docket No. 97) ("[T]he discovery sought by Plaintiff is relevant to Defendant's release defense and Plaintiff's assertion of mutual mistake, ... and [] the Court may properly consider such evidence in junction with Defendant's pending summary judgment motion, see Fournier v. Canadian Pac. R.R., 512 F.2d 317 (2d Cir. 1975) ...."). The parties have now completed such discovery, conducting three depositions and exchanging all documents relating to the underlying state court settlement.  Based on this discovery, it is now beyond dispute: the parties did *not* intend to include Plaintiff's federal lawsuit in the general release.  To the extent that the release may be read to include such a claim, this was a mutual mistake.

Both the Second Circuit and New York Court of Appeals have repeatedly held that a release may not be read to dispose of claims that the parties did not intend the release to include.[1]  Here, the testimony of Steven Bombard, Esq., the attorney who conducted the settlement negotiations for the City, makes it clear that the parties had no intention of including the federal civil rights action in the release. All settlement discussions were focused solely on the state court settlement. All of the settlement paperwork referred solely to the personal injury action.  All of the e-mails exchanged between the parties referred solely to the personal injury action.  The settlement check

---

[1] See, e.g., ASI Sign Sys. v Architectural Sys., 2000 U.S. App. LEXIS 4485, at *6 (2d Cir Mar. 21, 2000, No. 99-7962) ("A release may not be read to cover matters which the parties did not desire or intend to dispose of"); Mangini v McClurg, 24 N.Y.2d 556, 562 (1969) ("[T]he cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form.").

issued by the City referred solely to the personal injury action.  The City's internal settlement memo referred only to the state court action.  In short, there was never any intention by either side to include the federal action in the release. Defendant's attempt to recast the settlement, *ex post facto*, into a new agreement which the parties never made, must be rejected.

Defendant's argument that the release language is "clear and unambiguous" is a red herring.  The release document cannot be read in a vacuum.  Rather, it must be read in the context of the entire package of settlement documents that were exchanged by the City.  All of these documents refer solely to the state court action. In fact, the Stipulation of Settlement expressly limits the release to the state action: "Plaintiff has been advised and agrees that he/she is forever barred from seeking any other recovery *relating to the subject incident* as against the Releasees." (Ex. A, Stipulation of Settlement) (emphasis supplied).  This language directly contradicts defendant's claim that the release extends to Plaintiff's federal civil rights claim.  At a minimum, the conflicting language raises an issue of fact which precludes summary judgment.

To the extent that the broad wording in the release can be read to include the federal action, this was due to an oversight by the parties.  The Second Circuit has recognized that mutual mistake is a ground for voiding a release. <u>Allen v Westpoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991); <u>Fournier v. Canadian Pac. RR.</u>, 512 F.2d 317 (2d Cir. 1975).  Here, the General Release contained a blank space to carve out other lawsuits.  Neither Plaintiff nor the City of New York filled in this blank.  This omission was not done intentionally.  Rather, it was due to a mutual mistake by the parties. Under such circumstances, the release of Plaintiff's federal claims must be voided.

Lastly, Defendant's motion fails because Plaintiff did not "knowingly and voluntarily" waive his federal civil rights claim.  Both the Supreme Court and Second Circuit have made clear

that a plaintiff's waiver of constitutionally protected rights – even in a civil context – must be knowing and voluntary. See Fuentes v. Shevin, 407 U.S. 67, 94-95, 94 n.31 (1972); Doe v. Marsh, 1997 U.S. App. LEXIS 5065, *12-13 (2d Cir. 1997). Here, Plaintiff did not knowingly and voluntarily waive his federal civil rights claim.  In fact, Plaintiff had no idea that the settlement of his state court personal injury action could potentially bar his federal action as well. (Declaration of Allyson Mateo, at ¶¶ 11, 13). Plaintiff never discussed settling the federal claim with his attorneys, and he never gave them permission to settle his federal claim. Plaintiff thus did not "knowingly and voluntarily" waive his civil rights claim under Section 1983.  Accordingly, defendant's argument that the state court release bars his federal claims must be rejected.

## STATEMENT OF FACTS

On June 13, 2014, Plaintiff Allyson Mateo filed a lawsuit in the Supreme Court of the State of New York, Bronx Country, for injuries related to an assault that occurred on Rikers Island on April 28, 2013 ("the personal injury lawsuit" or "state action"). (Ex. B, State Court Complaint). The law firm of Raskin & Kremins represented plaintiff in this lawsuit. On November 12, 2014, plaintiff filed his federal lawsuit in the instant matter, alleging civil rights violations stemming from his arrest on July 26, 2011 ("the federal civil rights action") (Docket No. 1). Raskin & Kremins initially filed the federal action, but realizing that they lacked sufficient experience to litigate federal civil rights matters, they referred the case to the Law Offices of Jon L. Norinsberg on June 23, 2015. (Docket No. 6).

**The Parties Engage in Protracted Settlement Discussions, and Ultimately Settle the State Action for $50,000.00**

In 2014, a settlement conference took place for the personal injury lawsuit between Raskin & Kremins and Steven Bombard, Esq., of the New York City Law Department. (Ex C,  Bombard

Dep. at 22). In in 2014,  the City made an offer of $30,000 that was rejected by Plaintiff. (Id. at

23). After the rejection of 2014 offer, the next time the parties held settlement discussions was in

2016. (Id. at 26). These discussions were done telephonically between Mr. Bombard and William

Santiago, an employee of Raskin & Kremins. (Id.).

During these settlement discussions, Mr. Bombard increased his offer to $50,000.00. (Id.

at 32). Mr. Bombard acknowledged that this offer had nothing to do with the civil-rights action.

(Id. at 35).  Rather, the $50,000.00 offer was intended to compensate Plaintiff for any physical and

emotional injuries that he had stemming from the Rikers Island assault:

> Q:    When you made the offer of $50,000, that was intended to compensate
>        Mr. Mateo for the injuries he sustained on Rikers Island, correct?
> A:    It was the amount offered to settle the case.
> Q:    It's intended to cover any and all physical or emotional injuries that he
>        sustained from the Rikers Island Incident, correct?
> A:    Yes.
> Q:    It was not intended to compensate him for any other claims that he might
>        had against the [City] of New York, correct?
> A:    If it's noting this law department number, then no.  *Just for the Rikers
>        case*.
> Q:    So the $50,000 offer was related solely to the Rikers Island case, correct?
> A:    Yes.

(Bombard Dep. at 66-7)

**The Parties Never Discuss the Federal Action During their Settlement Negotiations.**

At no point during these settlement discussions was the federal civil rights action ever

discussed. (Bombard Dep. at 33). Mr. Bombard thus concedes that the $50,000 offer "had *nothing

to do with any other case* except the one case involving the Rikers Island Incident." (Id. at 35)

(emphasis supplied).   In fact, Mr. Bombard did not even learn about the federal case until early

2018. (Bombard Dep. at 33, 34).

William Santiago, the paralegal who handled settlement negotiations on behalf of Raskin & Kremins, likewise was not aware of Mr. Mateo's federal civil rights lawsuit. (Ex. D, Santiago Dep. at 65) ("Q: Before an agreement was reached with the city with Mateo I, were you aware he had another case pending in federal court? A: No."). Thus, neither of the two principal negotiators had any knowledge of the federal lawsuit at the time they agreed to settle the Rikers Island case for $50,000.00.

**The E-mail Transmitting the Settlement Paperwork States that the Documents Relate "Only to the Settlement of the above Subject Matter."**

On January 12, 2017, settlement paperwork was forwarded to Raskin & Kremins by Mr. Bombard. (Ex E, Jan 12, 2017 e-mail). In this e-mail, Mr. Bombard states, in all capital letters, that the documents relate "ONLY TO THE SETTLEMENT OF THE ABOVE SUBJECT MATTER." (Id.). Mr. Bombard testified that this email referred only to the settlement of the personal injury lawsuit. (Ex. C, Bombard Dep. at 43) ("Q: What does that mean? A: I believe it means this email relates only to the subject -- the settlement of that subject matter. Q: Meaning this state law case brought by Allyson Mateo? A: Yes."). See also id. at 44 ("I believe it's because it is relating only to this particular case.").

The e-mail transmitting the settlement documents references the Law Department's internal case number 2014-022999, and specifically refers to the date of the Rikers assault (Ex. E) ("D/I (date of incident) 4/29/2013"). This number solely relates to the personal injury lawsuit in state court. (Bombard Dep. at 39).

**The Stipulation of Settlement Expressly Limits the General Release to "This Action" and "The Subject Incident."**

The settlement documents sent by Mr. Bombard included a form identified as the "Stipulation of Settlement." (Ex. A, Stipulation of Settlement; Bombard Dep. at 45). The Stipulation of Settlement must be submitted in order for Plaintiff to get paid by the City. (Id.). The Stipulation states, in relevant part, that "*this action* is settled for the total amount of $50,000.00:" (emphasis supplied). As Mr. Bombard acknowledged, "this action" refers solely to the state court action. (Ex. C, Bombard Dep. at 48). There is no reference to the federal civil rights action in this form. (Id.). See also id. at 50 ("this settlement" refers to the Rikers Island action).

More importantly, the Stipulation of Settlement contains language which expressly limits the General Release to the state action. Specifically, it states that "Plaintiff has been advised and agrees that he/she is forever barred from seeking any other recovery *relating to the subject incident* as against the Releasees." (Ex. A) (emphasis supplied); (Ex. C, Bombard Dep. at 48-49). As Mr. Bombard conceded, this language means that Plaintiff is barred from bringing another lawsuit relating to the Rikers Island incident:

> Q:   What is your understanding of the sentence that we just read that, "Plaintiff has been advised and agrees that he or she is forever barred from seeking any other recovery relating to the subject incident as against the Releasees"?
> A:   I'm sorry. What was the question?
> Q:   What is your understanding of that last sentence?
> A:   That Plaintiff is agreeing they are barred from seeking any other recovery *relating to this incident* against the releasees.

(Ex. C, Bombard Dep. at 49). See also ibid. (the term "subject incident" refers to "this particular case we have been talking about [,] "the Rikers Island incident").

**The Stipulation of Settlement States that it is Not "Admissible in" Nor "Related to" Any Other Legal Action**.

The Stipulation of Settlement further states that this settlement is not "related to" any "other litigation ...." (Ex. A). Specifically, it states that "This stipulation shall not be admissible in, *nor is it related to*, any other litigation or settlement negotiations." (emphasis supplied).  Mr. Bombard understood this provision to mean that the state court settlement was "not related to any other settlements or negotiations," including the federal civil rights action.  (Ex. C, Bombard Dep. at 51) (Q: So it would not be related to any other state or federal pending actions; is that correct? A: I would think so).  Plaintiff was required to sign the Stipulation of Settlement in order to get paid. (Id. at 45).   The release by itself would not be enough.  (Id.).

**The Stipulation of Discontinuance Refers Solely to the State Court Action, Not the Federal Action.**

Another document that was part of the settlement package was the Stipulation of Discontinuance. (Ex. F, Stipulation of Discontinuance for State Court Action); (Ex. C, Bombard Dep. at 52-53).  The Stipulation of Discontinuance contains the Law Department's internal case number for Plaintiff's state law case, 2014-0222999. (Id.) It also contains the New York City Comptroller's number for this case, 2013 PI 10188932. (Id.) By its express terms, the Stipulation of Discontinuance refers only to "the above entitled action," which is the state action brought by Plaintiff against the City of New York. (Id. at 53-54).  There is no mention of the federal civil rights action in the Stipulation of Discontinuance. (Id. at 54).

**The Parties Inadvertently Fail to Fill in a Blank Space in the General Release that Would Have Excluded the Federal Action.**

The General Release included a blank space for a "carve-out" section for the attorneys to specify cases to be excluded from this release. (Ex. G, General Release). Bruce Raskin, Esq., the

attorney who signed off on the settlement paperwork, testified that failing to include the federal

civil rights action in the "carve-out" section was a mistake by both sides. (Ex. H, Deposition of

Bruce Raskin, Esq., at 54) ("I clearly think it was a mistake on our part and on the part of the City

to not have it properly incorporated in there and I think all the accompanying documents clearly

speak for themselves that it only pertains to one particular case."). There is no evidence that either

the Plaintiff, or the City, intentionally left this space blank.

**Plaintiff Signs the Settlement Documents in the State Action Without Any Knowledge or Intent of Waiving His Federal Civil Rights Claim.**

William Santiago, on behalf of Mr. Mateo, accepted the City's $50,000.00 offer to settle

the state court case in January 2017. No one from Raskin & Kremins had ever discussed Mr.

Mateo's federal civil rights case with Mr. Santiago. (Ex. E, Deposition of William Santiago, at

65). When Mr. Mateo accepted the $50,000.00 offer, he was not informed that the settlement would

have any impact on his federal civil rights lawsuit. (Mateo Decl., ¶ 11). Mr. Mateo relied upon

what his lawyers told him about the settlement agreement. (Id. at ¶ 10).

At the time of the settlement, plaintiff Allyson Mateo resided in New Hampshire. On

February 8, 2017, Mr. Mateo traveled to Raskin & Kremins' office in Manhattan from New

Hampshire to sign the settlement paperwork. (Mateo Decl., ¶ 7). Mr. Mateo met with Yvelissa

Mota, a paralegal at Raskin & Kremins, to sign the paperwork. (Id. at ¶ 8; Declaration of Yvelissa

Mota, at ¶ 2).

While plaintiff Allyson Mateo was at the office to sign the paperwork, he had no discussion

about the civil rights lawsuit. (Mateo Decl., at ¶ 12). At no point in time did Ms. Mota ever inform

Plaintiff that settlement of the personal injury lawsuit would have any impact on his federal civil

rights lawsuit. (Id. ¶ 12; Mota Decl., ¶ 11). In fact, no one from Raskin & Kremins ever informed

him that settling the state action could impact his federal civil rights lawsuit. (Id.); (Ex. H, Raskin Dep. at 53) ("[I]t was clearly not explained to the client that it meant anything else."). Had Mr. Mateo been informed that the settlement of his personal injury lawsuit could impact his federal civil rights lawsuit, he would have never agreed to sign the settlement. (Mateo Decl., at ¶ 14).

**The City Issues a Settlement Check Which Refers Only to the State Court Action**.

Pursuant to the terms of the settlement agreement between the parties, the City of New York issued a check to Plaintiff for $50,000.00.  (Ex. I, Settlement Check; Ex. C, Bombard Dep. at 62-3).   The check was made out to "Raskin & Kremins and Allyson Mateo."  (Id). Attached to this check was a document containing the City's "vendor invoice number." (Id.).  This number was the New York City Comptroller's internal number for the Rikers Island Case, 2013 PI 10188932. (Id.). The $50,000.00 check was solely for payment of the Mateo state law action. (Id.); (Bombard Dep. at 66-67).

**The City's Internal Settlement Memo Refers Only to the State Court Action.**

The City created an internal memo describing the case and reflecting the settlement amount offered.  (Ex. J, Internal Settlement Memo); (Ex. C, Bombard Dep. at 64-5).  This settlement document identifies the case number as "2014-022999," which is the Law Department's number for Plaintiff's state law case.  (Id.).  The "matter type" of the case is identified as "PI (personal injury) – Correction Facility." (Id.). The Law Department Division handling this case is identified as the "Tort Division", and more specifically, the "Unit/Team Bronx." (Id.).  The nature of the claim involved is "negligent supervision." (Id.). The "offer amount" to settle this negligent supervision claim is "50,000.00." There is no mention of the federal civil rights claim anywhere in this document.  (Id.).

–9–

**The Court Orders the City to Produce All Notes Relating to the Parties' Settlement Discussions, But the City Fails to Produce Mr. Bombard's Settlement Folder.**

At his deposition, Mr. Bombard testified that it would be his normal custom and practice to take notes of his negotiations with the Plaintiff's attorney. (Bombard Dep. at 23). These notes would be maintained in a settlement folder relating to that case. (Id.). The notes would either be kept inside of the folder, or written onto the outside of the folder itself. (Id.). During Mr. Bombard's deposition, the Court ordered the City to produce all of Mr. Bombard's settlement notes, holding that these documents were material and relevant to determining the scope of the release:

> The City, in its motion, is proposing to rely on a particular view of the scope of the settlement, and the plaintiff is claiming mutual mistake as to the scope of the settlement, such that the City's perspective and understanding of the scope of the settlement is [a material] element of … the plaintiff's ability to prevail on a mutual mistake assertion.

(Bombard Dep. at 85).

Thus, the Court overruled the City's assertion of the work product privilege, and ordered the City to produce all of Mr. Bombard's settlement notes (Id. at 88) ("The plaintiff is entitled to inquire and to see all elements of the notes that relate to settlement discussion, even to the extent that they reflect the [thoughts] of or impressions or strategies of counsel concerning settlement discussions.").

Notwithstanding the Court's Order, the City has failed to produce Mr. Bombard's settlement folder. Mark Zuckerman, Esq., the attorney now assigned to handle this matter for the Defendant, has stated that the settlement conference folder cannot be located. (Ex. K, e-mail dated August 1, 2018 from Mark Zuckerman, Esq.) ("The search is now completed. No responsive documents were located."). While the City did produce a heavily redacted, two page document at Mr. Bombard's deposition, these notes were scant and shed no little light on the negotiations which

took place between the parties.  (Ex.  L, Redacted Bombard Notes).

### SUMMARY JUDGMENT STANDARD -- CONTRACT DISPUTES

"The law in this Circuit is clear: where a contract is not wholly unambiguous, summary judgment must be denied even where both parties move for pre-trial resolution." Long Is. Airports Limousine Serv. Corp. v Playboy-Elsinore Assoc., 739 F.2d 101, 103 (2d Cir. 1984), citing Schering Corp. v. Home Insurance Co., 712 F.2d 4, 10 (2d Cir. 1983) (internal quotation marks omitted); Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317, 1320 (2d Cir. 1975). Thus, "[w]here contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment [is] improper." Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985).  Under such circumstances, "the parties have a right to present extrinsic evidence of their intent at the time of contracting."  Long Is. Airports Limousine Serv. Corp., 739 F.2d at 103-104 (quoting Schering, 712 F.2d at 9). "If there is conflicting extrinsic evidence regarding the parties' intent, the district court may only identify the issues at the summary judgment stage, not resolve them." Burger King Corp. v. Horn & Hardart Co, 893 F.2d 525, 528 (2d Cir. 1990), citing Schering Corp., 712 F.2d at 9-10.


### ARGUMENT

### I.    SUMMARY JUDGMENT BASED ON THE GENERAL RELEASE MUST BE DENIED.

### A.    A Release May Not Be Construed to Cover Claims Which the Parties Did Not Intend to Include.

Under both state and federal law, "[a] release may not be read to cover matters which the parties did not desire or intend to dispose of." ASI Sign Sys. v Architectural Sys., 2000 U.S. App. LEXIS 4485, at *6 (2d Cir Mar. 21, 2000, No. 99-7962) (quoting Lefrak SBN Assocs. v. Kennedy

Galleries, Inc., 203 A.D.2d 256, 257 (2d Dep't 1994)). Thus, the "meaning and coverage [of a release] necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given." Clerico v Pollack, 148 A.D.3d 769, 771 (2d Dep't 2017) (citing Cahill v Regan, 5 N.Y.2d 292, 299 (1959); Matter of Mercer, 141 A.D.3d 594, 597 (2016)). "[I]f from the recitals therein or otherwise, it appears that the release is to be limited to only particular claims, demands or obligations, the instrument will be operative as to those matters alone." Rotondi v Drewes, 31 A.D.3d 734, 735-736 (2d Dep't 2006) (citations and quotations omitted). Thus, "the fact that the language of the Release is broad, expansive and cast in absolute terms does not mean that it is capable of only one reasonable interpretation." ASI Sign Sys., 2000 U.S. App. LEXIS 4485, at * 5.

Here, the evidence is overwhelmingly clear: the parties did *not* intend the state court release to cover the pending federal civil rights action. In fact, there is not a single reference to the federal court action in any of the settlement documents.  (Ex. A; Ex. F; Ex. G; Ex. I). The parties never discussed the federal civil rights case in their settlement negotiations. (Ex. C, Bombard Dep. at 33). All of the settlement paperwork referred solely to the personal injury action. (Ex. A; Ex. E; Ex. F; Ex. I). All of the e-mails exchanged between the parties referred solely to the personal injury action. (Ex. E). The settlement check issued by the City referred solely to the personal injury action. (Ex. I). The City's own internal settlement memo referred only to the state court action. (Ex. J). In short, there was never any intention by either side to include the federal action in the General Release.[2]

_____

[2] In fact, neither of the principal negotiators, Mr. Bombard and Mr. Santiago, even *knew* about the federal claim at the time the state court settlement was reached. (Ex. C, Bombard Dep. at 34; Ex. D, Santiago Dep. at 65, 66). Thus, neither side could have intended to include the federal

Since "[a] release may not be read to cover matters which the parties did not desire or intend to dispose of," <u>ASI Sign Sys. v Architectural Sys.</u>, 2000 U.S. App. LEXIS 4485, at *6 – and since the evidence here is clear that the parties did not intend to release the federal civil rights action – summary judgment must be denied. <u>See</u> <u>id.</u>, 2000 U.S. App. LEXIS 4485, at *5-6 ("As the district court noted, the prior lawsuit between the parties was completely unrelated to the Knoxville office, and no agreement with respect to this office was ever reached during the settlement negotiations culminating in the Release."); <u>Clerico v Pollack</u>, 148 A.D.3d 769, 771 (2d Dep't 2017) ("Here, as the plaintiffs correctly contend, the subject release only covered the causes of action alleged in the plaintiffs' 2008 complaint, which sought to recover sums allegedly owed in the first sale of the property, and did not encompass the causes of action set forth in the instant action, which seek, <u>inter alia</u>, to recover sums resulting from a second sale of the property by Tatiana Bell Corp.").

In fact, the New York Court of Appeals and Appellate Division have repeatedly reversed dismissals based on a release, where, as here, the parties present conflicting evidence regarding the intended scope of the release. <u>See, e.g.</u>, <u>Mangini v McClurg</u>, 24 N.Y.2d 556, 562 (1969) ("[T]he cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form.") (collecting cases); <u>Cahill v. Regan</u>, 5 N.Y.2d 292, 299 (1959) ("When the releases were executed, it is clear, the parties were solely concerned with settling the controversy then being litigated, the ownership of machinery in the employer's possession, a subject having no relation to the invention or the patent."); <u>Kaminsky</u>

--------

action within the scope of the General Release.

v. Gamache, 298 A.D.2d 361, 362 (2d Dep't 2002) ("It is clear that the release in the agreement was not intended to resolve the instant controversy concerning the Tenant's present and future entitlement to occupy the premises in the absence of a new lease. Thus, the Supreme Court erred in concluding that the release precluded this proceeding to recover possession of the apartment ....") (citations omitted); Lefrak SBN Assoc. v. Kennedy Galleries, 203 A.D.2d 256, 257 (2d Dep't 1994) ("Contrary to the defendant's contentions, the record supports the conclusion that the general release relied upon as a complete defense to the action was not intended to cover the claim raised by the plaintiff herein."). Accordingly, defendant's motion for summary judgment must be denied.[3]

### B.   The Settlement Documents Contain Conflicting and Contradictory Language, Thus Precluding Summary Judgment.

#### i.   The Settlement Paperwork Consists of Multiple Documents, Not Just The General Release.

Defendant argues that the meaning of the release is "clear and unambiguous" on its face.

---

[3] Denial of summary judgment is further warranted on the ground that the City has lost Mr. Bombard's settlement folder. (Ex. K, e-mail from Mark Zuckerman, Esq., dated August 1, 2018). This folder contains Mr. Bombard's personal notes regarding the settlement negotiations which took place between the parties. (Bombard Dep. at 23).  The Court previously ruled that such notes are relevant to establishing the parties' intent regarding the scope of the release, and must be produced: "plaintiff is entitled to inquire and to see all elements of the notes that relate to settlement discussion, even to the extent that they reflect the [thoughts] of or impressions or strategies of counsel concerning settlement discussions." (Bombard Dep. at 88).  The City's failure to preserve this material evidence, by itself, warrants denial of Defendant's motion for summary judgment. See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 110 (2d Cir. 2001) ("[T]he intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line.") (citation omitted); Buskey v. Bos. Mkt. Corp., No. 04 Civ. 2193 (SJ), 2006 U.S. Dist. LEXIS 65756, at *26 (E.D.N.Y. Aug. 14, 2006) ("[T]he Court agrees with Plaintiff that, due to Defendant's spoliation of evidence, denial of summary judgment is a warranted sanction.").

(Def. Mem. at 5). However, Defendant focuses only on the language in the General Release.  But the release does not exist in a vacuum. Rather, it is just one of multiple documents that comprise the entire settlement agreement. (Ex. C, Bombard Dep. at 36, 55).  As Mr. Bombard explained, the City sends out a "set of documents" for each settlement – including, a Stipulation of Settlement, a Stipulation of Discontinuance, and the General Release, among others –  and "all the papers need to be completed" before the City will issue a check. (Id. at 36). Thus, the meaning of the release must be determined "in the context of the entire integrated agreement," not just in isolation.  Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). Indeed, "[t]he fact that each provision when read separately may be unambiguous does not necessarily mean that when read together they will be." Id., 959 F.2d at 429 (reversing summary judgment where two disputed contract terms, when read together, were susceptible to different interpretations).

Here, there are conflicting terms in the agreement which lead to two reasonable interpretations of the scope of the release. The Stipulation of Settlement states that "Plaintiff has been advised and agrees that he/she is forever barred from seeking any other recovery *relating to the subject incident* as against the Releasees." (Ex. A, Stipulation of Settlement) (emphasis supplied); (Ex. C, Bombard Dep. at 48-49).  However, the General Release extends to "*any and all claims*, causes of action [and] suits" that Plaintiff could ever bring against the City. (Ex. G, General Release, at 1) (emphasis supplied).  Thus, there is a direct conflict between the language in the Stipulation of Settlement and the General Release regarding the scope of the release.

Since there are two plausible interpretations of the release, summary judgment must be denied. See Seiden, 959 F. 2d at 429 ("Contrary to the conclusion of the trial court, we find the contract susceptible to more than one reasonable reading."); Rothenberg v. Lincoln Farm Camp,

Inc., 755 F.2d 1017, 1020 (2d Cir. 1985) ("[T]here is more than one reasonable interpretation of Clause 4, and [therefore,] we conclude that there are fact questions to be determined by a jury"); Burger King Corp. v. Horn & Hardart Co, 893 F.2d 525, 528 (2d Cir. 1990) (where the parties present conflicting evidence of intent, "the district court may only identify the issues at the summary judgment stage, not resolve them."); Long Is. Airports Limousine Serv. Corp. v. Playboy-Elsinore Assoc., 739 F.2d 101, 103 (2d Cir. 1984) ("We do not suggest now how the clauses or language should be reconciled, only that they are not so clearly unambiguous as to be capable of disposition on summary judgment."); Saw Mill Broadcasters, Inc. v. Moore, 561 F Supp 1139, 1140-1141 (S.D.N.Y. 1983) ("Because the agreement does not unambiguously support either party's interpretation, the case is not a proper one for summary judgment."), citing Painton & Company v. Bourns, Inc., 442 F.2d 216 (2d Cir. 1971).

### ii.   The Settlement Contract's Language Is Ambiguous as a Matter of Law.

"The law in this Circuit is clear: where a contract is not wholly unambiguous, summary judgment must be denied even where both parties move for pre-trial resolution." Long Is. Airports Limousine Serv. Corp, 739 F.2d at 103 (citing Schering Corp. v. Home Insurance Co., 712 F.2d 4, 10 (2d Cir. 1983) (internal quotation marks omitted); Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317, 1320 (2d Cir. 1975). Thus, when conflicting evidence of intent is shown, "this presents a triable issue of fact, and summary judgment [is] improper." Rothenberg, 755 F.2d at 1019.

Here, the settlement documents contain conflicting evidence of the parties' intent. On the one hand, the Stipulation of Settlement limits the General Release to "this action" and the "subject incident." (Ex. A, Stipulation of Settlement).  Further, the Stipulation of Discontinuance refers

only to the "above entitled action," and contains the Law Department's internal number solely for Plaintiff's state action. (Ex. F, Stipulation of Discontinuance). Similarly, in the e-mail transmitting these documents, Mr. Bombard states that the documents relate "ONLY TO THE SETTLEMENT OF THE ABOVE SUBJECT MATTER." (Ex. E) (original emphasis).   On the other hand, the General Release contains broader language, barring Plaintiff from bringing "any and all claims" that could ever be brought against the City of New York. (Ex. G, General Release, at 1).

This conflicting language in the settlement agreement makes it "ambiguous" as a matter of law. See Seiden Assocs., 959 F.2d at 428 ("We have defined ambiguous language as that which is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'") (quoting Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 (2d Cir. 1987)) (internal citations omitted). Accordingly, summary judgment must be denied.  See Albany Sav. Bank, F.S.B. v Halpin, 117 F3d 669, 673-674 (2d Cir 1997) ("[T]he district court's determination that 'the general scope of the release is clear from the unequivocal language of the release' was erroneous, since it was ambiguous as to whether it releases the Halpins from undisputed notes existing at the time of the release.").

### C.    There was a Mutual Mistake as to the Scope of the Release, as the Parties Failed to Include the Federal Action in a Blank Space in the Release.

Even where the language of a release is "clear and unambiguous on its face, the court may still rescind that release where it finds either mutual mistake or one party's unilateral mistake coupled with some fraud of the other party." Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (internal citations, brackets and ellipses omitted). Thus, "[i]f the plaintiff can show

–17–

that by a mutual mistake of the parties ...  the present cause of action is embraced in the release, contrary to the intent of the parties, ...  he is entitled to an instruction to the jury to the effect that the release does not bar his right to recover." Michael Rose Prods., Inc. v. Loew's, Inc., 143 F. Supp. 606, 608 (S.D.N.Y. 1956). "Evidence of the preliminary negotiations of the parties leading to the execution and delivery of the general release [is] admissible as bearing upon the intentions of the parties." (Id.).

The seminal case on this issue is Fournier v Canadian P. R.R., 512 F.2d 317 (2d Cir. 1975). In Fournier, the plaintiff, who injured his left leg and foot while working for the defendant railroad, signed a release awarding him $916.00 and stating that the railroad was freed of all claims arising out of the accident. The Second Circuit denied the railroad's motion for summary judgment because there was a dispute as to whether the release was intended to cover back pay only, or all accident-related damages. Id., 512 F.2d at 318-19 ("Although the settlement agreement recites that, in consideration of the defendant's payment of $916 to him, Fournier generally released it of all claims arising out of the accident, Fournier's deposition, viewed most favorably to him, supports an inference that the parties intended, notwithstanding the agreement's broad language, to settle only his claim for back wages, leaving open the matter of damages for injuries."). The holding in Fournier controls the disposition of this motion.

The parties clearly did not intend to settle Plaintiff's federal civil rights claim. See Pt. I(A), supra.  Rather, the parties mistakenly failed to exclude the federal civil rights action in the state court release.  The General Release contains a blank space to carve out other lawsuits (Ex. G), but neither Plaintiff nor the City of New York filled in this blank. This omission was certainly not

intentional.[4] Instead, it was the result of an oversight by both sides, constituting a "mutual mistake" that negates the release of the federal claims.

Since both parties acted on the belief that the release pertained only to the state action, the release cannot be used to bar the federal action, and summary judgment must be denied. See Allen, 945 F.2d at 46 (holding that release did not bar claim where facts alleged established "recission based on mutual mistake: both parties to the release shared the same erroneous belief as to a material fact."); Fournier, 512 F.2d at 318-319 ("[P]laintiff claims he was told and believed that he was settling solely a claim for back wages, which would support setting aside the release, whereas  defendant denies plaintiff's assertions and relies on the clear language of the release.... Since issues of fact are present here, we reverse."); Brancazio v. Amtrak,  No. 82 Civ. 848 (RLC), 1982 U.S. Dist LEXIS 17019, at *11 (S.D.N.Y. Dec. 17, 1982) ("[A]s was the case in Fournier, the plaintiff's affidavit, viewed most favorably to him, supports an inference that the parties intended, notwithstanding the agreement's broad language, to settle only his claim for back wages, leaving open the matter of damages for injuries.") (internal citations and quotation marks omitted). See also  Bushkin, Gaims, Gaines, Jonas & Stream v. Garber, 677 F. Supp. 774, 776 (S.D.N.Y. 1988) ("Whether the negotiations of the parties were such that the court can find that the parties intended that this alleged [claim] ... [to be] included in the settlement is a material issue of fact that precludes summary judgment."); Michael Rose Prods., Inc., 143 F. Supp. at  608 ("[P]laintiff in the case at bar has the right to present evidence tending to establish .... [m]utual mistake," by showing "[t]hat plaintiff did not intend to discharge the anti-trust claim … when it executed the

---

[4] Defendant does not suggest, nor could he, that the parties deliberately failed to list the federal action in this section of the release.  There is simply no evidence in the record to support such a conclusion.

–19–

general release, and that defendants likewise did not intend to include that claim in the release."). Accordingly, summary judgment must be denied.[5]

### D.   Plaintiff Did Not Knowingly and Voluntarily Waive his Federal Civil Rights Claim.

#### i.   Plaintiff Had No Idea That His Federal Claims Could Be Extinguished By Signing the State Court Release.

"In the civil context, a party waiving constitutionally protected rights – even when doing so through the execution of a contract – must also be made aware of the significance of the waiver." Morris v. N.Y. City Emples. Retirement Sys., 129 F. Supp. 2d 599, 609 (S.D.N.Y. 2001). Where a waiver concerns a fundamental constitutional right, it is neither "presumed nor may it be lightly inferred." Doe v. Marsh, 105 F.3d 106, 111 (2d Cir. 1997) (internal quotation omitted). Courts will therefore "indulge every reasonable presumption against waiver of fundamental constitutional rights." Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). In such circumstances, proof of waiver must be established by "clear" and "compelling" evidence. Curtis Publishing Co. v. Butts, 388 U.S. 130, 145 (1986).[6]

---

[5] The cases relied upon by Defendants (Def. Mem. at 7) are readily distinguishable.  First, none of these cases cite Fournier v. Canadian P. R.R., 512 F.2d 317, 318 (2d Cir. 1975), which the Court relied upon in allowing the parties to conduct discovery. (Docket No. 97), nor do they cite any of the other Second Circuit and Court of Appeals release cases relied upon by Plaintiff.  (See Pt. I (A), supra.)   Second, there was no discovery conducted, and no evidentiary record, in any of these cases.  Third, none of these decisions considered whether or not there was a "knowing and voluntary" waiver by the Plaintiff of his federal rights, which both the Supreme Court and Second Circuit have held is necessary even in a civil context.  (see Pt. IV, infra.)  Lastly, in all but two of the cases, the plaintiffs were acting pro se, and thus, could not be expected to present all of the relevant case law and arguments that would expected to be raised by experienced counsel.

[6] "[T]he question of a waiver of a federally guaranteed constitutional right is a federal question controlled by federal law.'" Legal Aid Society v. City of New York, 114 F. Supp. 2d 204, 226 (S.D.N.Y. 2000) (quoting Brookhart v. Janis, 384 U.S. 1, 4 (1966)) (internal ellipses omitted).

In the criminal context, constitutional rights can be waived only if the waiver is made "voluntarily and knowingly." See Clark v. Stinson, 214 F.3d 315, 324 (2d Cir. 2000). While neither the Supreme Court nor the Second Circuit has expressly held that the same standard applies in the civil context, both Courts have strongly suggested that the standards are the same. See Fuentes v. Shevin, 407 U.S. 67, 94-95, 94 n.31 (1972); Doe v. Marsh, 1997 U.S. App. LEXIS 5065, *12-13 (2d Cir. 1997) (acknowledging that Second Circuit precedents "suggest that the waiver of a fundamental right in the context of civil cases must be made voluntarily, knowingly and intelligently.") (collecting cases); United States v. Local 1804-1, 44 F.3d 1091, 1098 n.4 (2d Cir. 1995) (noting that in civil context, waiver must be "voluntary, knowing and intelligent."). Moreover, the Third, Fourth, Fifth, Sixth, Ninth and Eleventh Circuits have also held or supported the proposition that the same standard applies. See Krentz v. Robertson Fire Protection District, 228 F.3d 897, 908 (8th Cir. 2000) (Beam, C.J., dissenting) (collecting cases). Regardless of the circumstances of the case, "a waiver of constitutional rights in any context must, at the very *least*, be clear." Fuentes, 407 U.S. at 95 (original emphasis).

Here, it is beyond dispute that Mr. Mateo did not "voluntarily, knowingly and intelligently" waive his constitutionally protected rights in his federal civil rights action. Marsh, 1997 U.S. App. LEXIS 5065 at *13. Mr. Mateo was not even *aware* that the state court release could be construed as a waiver of his federal rights under Section 1983. (Mateo Decl. ¶ 13).  There was nothing in the settlement paperwork to alert him to this possibility.  There is no reference anywhere in the settlement documents to Plaintiff's federal civil rights action. (Ex. A; Ex. F; Ex. G; Ex. I).  To the

–21–

contrary, the settlement documents repeatedly and consistently referred only to the settlement of the state court personal injury action.  Under such circumstances, Mr. Mateo was clearly *not* "aware of the significance of the waiver." Morris, 129 F. Supp. 2d at 609.

In an analogous context, the Second Circuit has held that "[a] release in exchange for early retirement benefits is effective only if, in the totality of the circumstances, the employee's waiver of rights was 'knowing and voluntary.'" Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1367 (2d Cir. 1991).  When determining whether a waiver was made knowingly and voluntarily, courts must consider the  following factors: "(1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney (and whether the employer encouraged the employee to consult with an attorney and gave him/her a fair opportunity to do so); and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law." DePace v. Matsushita Elec. Corp. of Am., No. 02-CV-4312 (ERK)(VVP) 2004 U.S. Dist LEXIS 13316, at *44-45 (E.D.N.Y. July 16, 2004), quoting Laniok, 935 F.2d at 1368.

Here, the Laniok factors militate against finding a knowing and voluntary waiver.  Plaintiff has only very limited education, and he had no role in drafting the terms of the settlement paperwork. (Mateo Decl. at ¶¶ 2, 9).  While Plaintiff was represented by an attorney, his attorneys told him only that he was settling his state court personal injury claim, not his federal civil rights claim. (Id. at ¶¶ 6, 8, 11-13).  The consideration given to Plaintiff, $50,000.00, was initially rejected

by Plaintiff, and was barely enough to settle the personal injury claim. (Id. at ¶¶ 5, 15).  It was certainly not enough to settle *both* claims, especially since Plaintiff had spent 2.5 years in jail as a result of Defendant's civil rights violations. (Id. at ¶¶ 15, 16). Thus, the Laniok factors militate strongly against finding that Plaintiff knowingly and voluntarily waived his federal claims. Accordingly, the release of such claims must therefore be set aside.  DePace, 2004 U.S. Dist. LEXIS 13316, at *50-51 (the parties' lack of understanding as to benefits that Plaintiffs would receive in exchange for giving up their rights was "sufficient to undermine the knowing and voluntary nature of the releases.").

### ii.    Plaintiff Never Authorized the Settlement of His Federal Claims, and His Attorneys Lacked Authority to Do So on His Behalf.

Apart from lack of waiver, the release of Plaintiff's federal claims is further invalid because Plaintiff never *authorized* his attorneys to settle his federal civil rights action.  (Mateo Decl.  ¶¶ 11-15).  Plaintiff only gave his consent settle the personal injury lawsuit.  (Id., at ¶¶ 5-6).  Plaintiff never gave his attorneys permission to settle any other legal matter on his behalf except for this one claim.  (Raskin Decl., at ¶ 3).  Therefore, even if his attorneys had intended to settle the federal civil rights claim – which they did not (Raskin Decl., ¶ 2) – they lacked *legal authority* to do so. See Ricketts v Pennsylvania R. Co., 153 F2d 757, 759-760 (2d Cir. 1946) ("[W]hatever may be the law in England, it is well settled in this country that an attorney has no implied authority to compromise a claim.").  This is so even though Plaintiff himself signed the release.  (Id.,153 F.2d at 760) ("The release would still be invalid even though the plaintiff signed it without reading it, for he would have been justified in relying upon what his lawyer told him of the contents.").

–23–

Accordingly, the release of federal claims is invalid and must be set aside.[7]

  **E.**  **Detective Carinha was Not an Intended Third-Party Beneficiary of the Release Under New York Law.**

    **i.**  **The Benefit to the Third Party Must Be "Sufficiently Immediate," and Not "Incidental."**

Under New York law, "[a] party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." California Pub. Emples. Retirement Sys. V. Shearman & Sterling, 95 N.Y.2d 427, 434-435 (2000) (internal citations omitted). The parties' intent to benefit the third party must be apparent from the face of the contract. LaSalle Nat'l Bank v. Ernst & Young LLP, 285 A.D.2d 101, 108-09 (1st Dep't 2001) (citations omitted). "Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent." (Id.).

Here, Detective Carinha was not a party to the earlier action, nor was he identified as an intended beneficiary of the release in that action.  While the release refers broadly to "employees" of the City of New York, this language was clearly intended to cover unnamed *Department of*

---

[7] Defendant's suggestion that Plaintiff should return the $50,000.00 that he received for his personal injuries in the state court action – in order to be able to challenge the release in this federal action (Def. Mem. at 13) – is baseless. Plaintiff does not seek to void the state court settlement.  Rather, he merely opposes defendant's attempt to use that release as a bar to his federal civil rights claim. Thus, there is no need for Plaintiff to first return the settlement monies from the state court settlement.  See Farrington v Harlem Sav. Bank, 280 N.Y. 1, 4 (1939) ("The plaintiff was not required to return the thirty dollars received. He was not seeking to rescind a contract on the ground of fraud. He denied that he made the contract ....")

*Correction* employees who may have been involved in the Rikers Island incident. (Bombard Dep. at 60-61). It certainly was not intended to protect Detective Carinha for the violation of Plaintiff's federal civil rights in an unrelated action.[8]

Since the benefit to Detective Carinha was, at most, "incidental," and not "sufficiently immediate," <u>California Pub. Emples. Retirement Sys</u>, 95 N.Y.2d at 434-435, Detective Carinha cannot rely upon this release to escape liability for his violations of Plaintiff's federal civil rights. <u>See Redwood Valuation Servs. LLC v Premium Holding</u>, LLC, 2014 N.Y. Slip Op 32544[U], *6 (Sup Ct, N.Y. Co. 2014) ("Plaintiff is not a party to the Release and Settlement Agreement, and the Release and Settlement Agreement does not identify Redwood as an intended beneficiary. In fact, this agreement contains no mention of Redwood, and there is nothing in the Release and Settlement Agreement clearly showing an intent to permit Plaintiff to enforce this agreement."). Accordingly, summary judgment must be denied.

## CONCLUSION

Defendant asks this Court to enforce an agreement that was never made. However, the evidence is overwhelming that neither side ever intended to release Plaintiff's federal claims. Defendant should not be able to receive the benefit of a bargain that the parties never made. Summary judgment must be denied.

---

[8] It is well established that "neither private employers nor municipalities are liable under §1983 for the constitutional torts of their employees." <u>Tchatat v. City of New York</u>, No. 14 Civ. 2385 (LGS), 2015 U.S. Dist. LEXIS 115093, at *23 (S.D.N.Y. Aug. 28, 2015). Thus, the City of New York would have had *no reason* to include Detective Carinha as an intended beneficiary of this release, since it would not be liable for his violation of Plaintiff's civil rights under 42 U.S.C. § 1983.

Dated: New York, New York
           August 10, 2018

                                        Respectfully submitted,

                                        Jon L. Norinsberg, Esq.
                                        225 Broadway, Suite 2700
                                        New York, N.Y. 10007
                                        (212) 791-5396